[No. 20677. Department Two. September 6, 1927.]

P. W. SWEET, *Appellant*, v. M. A. DOUGE *et al.,*
*Respondent.*[1]

[1] PHYSICIANS AND SURGEONS (10-1) — ACTION FOR MALPRACTICE —
EVIDENCE—SUFFICIENCY. A verdict for malpractice in the set-
ting of a broken leg is sustained, where it appears that no ex-
tension process was employed for holding the broken ends of
the bone in apposition and alignment, recognized by the profes-
sion as a necessity for a fracture of the nature suffered, re-
quiring the physician afterwards to fall back upon the internal
treatment of a "Lane plate," considered as a last resort because
of the danger of infection, which followed, keeping the patient
in the hospital for six months, suffering great affliction, with
bad results.

Appeal from a judgment of the superior court for
Lewis county, Simpson, J., entered December 4, 1926,
upon the verdict of a jury rendered in favor of the
defendant, in an action for medical services, defended
on the ground of malpractice. Affirmed.

*Bates & Peterson,* for appellant.

*Forney & Ponder,* for respondents.

PARKER, J.—The plaintiff, Dr. Sweet, commenced this
action in the superior court for Lewis county, seeking
recovery of compensation for surgical and medical
treatment rendered by him in his hospital in Centralia
to the defendant Douge, incidental to the breaking of
the femur of his right leg at a point about midway be-
tween the hip and knee joints. The defendant an-
swered, denying that the services were of any value to
him, and further affirmatively alleged that the treat-
ment of his leg by the plaintiff was so negligently and
unskillfully performed that he was damaged thereby,
and prayed for an affirmative money judgment against
the plaintiff accordingly. The case proceeded to trial

¹Reported in 259 Pac. 25.

upon these issues, resulting in verdict and judgment denying to the plaintiff any recovery, and awarding to the defendant recovery against the plaintiff in the sum of $1,500. From this final disposition of the case in the superior court, the plaintiff has appealed to this court, assigned as error only that the superior court erred in denying his challenge to the sufficiency of the evidence to sustain any affirmative recovery by the defendant, and the denial of his motion for judgment, accordingly, notwithstanding the verdict.

Respondent Douge suffered the accidental breaking of the femur bone of his right thigh on December 21st, and was immediately taken to appellant's hospital for treatment, where, with the aid of an associate physician and surgeon, appellant undertook to set the broken bone and treat the injured leg. Whatever injury there then was to the flesh of the leg was internal only. They, by outward manual manipulation, attempted to bring the two broken ends of the bone in apposition and alignment, but were, by that method, unable to do so and securely fix them in place. A second similar attempt at setting the broken bone and holding it in place was made during the next few days. Appellant says several such attempts were made prior to December 29th, while respondent says only two attempts of any nature were made, looking to the bringing of the two broken ends into apposition and alignment prior to December 29th.

According to the testimony of respondent and one other witness, no continuous extension process was applied, looking to holding the broken parts in apposition and alignment, prior to December 29th; that is, no "Buck's Extension" or similar process was used prior to December 29th. By that process is meant some uniform, continuous force or pull, applied to the leg or foot below the break, to overcome the natural

contraction of the muscles of the thigh, which have a strong tendency to pull the broken ends together and cause them to slip by each other and overlap, especially when the break is oblique in its course across the bone, as this break was. One of the extension methods, evidently the most common and most used by the profession, is to cause the force or pull by a weight attached to a cord passing over a pulley at or near the foot of the bed, the other end of the cord being attached, in some appropriate manner, to the foot or leg of the patient below the break, thus causing a uniform continuous pull to overcome the natural contraction of the muscles surrounding the break. The oblique course of the break of respondent's femur was readily discernible by X-Ray photographs, and hence the manifest necessity of using some such method of extension. The counter-extension, that is, the pull upwards holding the body against the extension downwards, is effected by a splint appliance, on the upper end of which is a ring fitting around the thigh against the groin of the patient.

On December 29th, without having used any extension process whatever, appellant and his associate cut into the flesh of the thigh of respondent, opened it clear to the broken ends of the bone, placed them in apposition and alignment and secured them in that position by the insertion and fastening in place upon the bone a so-called "Lane plate." Serious infection appeared soon thereafter, causing respondent to be necessarily confined to the hospital for treatment of such infection for a period of six months, and even then upon his leaving the hospital, the dire results of such infection were far from being removed. Respondent was later materially bettered in that respect by further surgical and medical treatment rendered to him by another physician and surgeon.

The jurors were warranted in believing, as they evidently did believe from the evidence, that appellant and his associate wholly failed to use any extension process whatever in the original treatment of respondent's broken femur and injured leg prior to December 29th, when they opened his thigh and inserted the "Lane plate." Thereafter, apparently, they did use some extension process in the further treatment of the injury, but with that we are not here concerned.

[1] In our present inquiry, as we view this case, we are not confronted with the question of discretion on the part of an attending physician or surgeon in adopting one of two or more recognized methods of treatment, but our inquiry is as to whether or not the evidence warranted the jurors in finding, as they manifestly did find, that no extension process was used in the treatment of the injury prior to opening the flesh and inserting the "Lane plate." The evidence is ample to warrant the conclusion that the opening of the flesh, the injury thereto being wholly internal, and the insertion of a "Lane plate," with a view of holding the ends of a broken bone in apposition and alignment, is a method of last resort; so recognized by the profession generally, because of the great danger of infection following such method of treatment. The evidence also warrants the conclusion that, in a fracture of the nature here in question, the profession universally recognizes the necessity of some extension process; that of the "Buck's Extension" or some similar process, as the one effective method of holding the broken ends in apposition and alignment to give them opportunity for healing and growth together.

The testimony given upon the trial of this case is quite voluminous. We have painstakingly reviewed every word of it, as it has been fairly and in much detail abstracted by counsel for appellant. But the case,

in its last analysis, as we view it, presents only the question of fact as to whether or not appellant used any extension process in the treatment of respondent's broken leg prior to the opening of the flesh of the thigh and the insertion of the "Lane plate." The jury manifestly found that no such process was used prior to the opening of the flesh and the insertion of the "Lane plate." The jury also manifestly found that, had some such extension process been employed by appellant and his associate, there would almost certainly have been no necessity for the opening of the flesh of the thigh and the insertion of the "Lane plate," from which respondent's great affliction followed. We cannot see our way clear to disturb the verdict and judgment.

The judgment is affirmed.

HOLCOMB, MAIN, and MITCHELL, JJ., concur.